FILED
2017 Nov-28 PM 01:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTER DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| THOMAS HARRIS,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | Case No.: 6:16-cv-01859-RDP |

### MEMORANDUM OF DECISION

Plaintiff Thomas Harris ("Plaintiff" or "Harris") brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") to deny his claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). *See* 42 U.S.C. §§405(g) and 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

### I.    Proceedings Below

Plaintiff filed his applications for DIB and SSI on January 24, 2014, alleging disability beginning March 24, 2012.[1] (Tr. 10, 77). The claim was initially denied on April 9, 2014. (Tr. 10, 99). After his application was denied, Plaintiff filed a written request for a hearing. (Tr. 10, 104). On July 22, 2015, Plaintiff received a hearing before Administrative Law Judge ("ALJ") Patrick R. Digby. (Tr. 25–47). On November 4, 2015, the ALJ determined that Plaintiff was not disabled under Sections 216(i) and 223(d) of the Act. (Tr. 19).

---

[1] On July 22, 2015 Plaintiff amended the date of disability to May 20, 2013. (Tr. 27, 190).

1

On September 17, 2016, the Appeals Council denied Plaintiff's request for review of the ALJ decision. (Tr. 1–3). Following that denial, the final decision of the Commissioner became a proper subject of this court's appellate review. *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (finding the ALJ decision final for purposes of judicial review when the Appeals Council denied review).

Plaintiff Thomas Harris was forty-four years old both at the time of his hearing before the ALJ, and when the ALJ's decision was rendered. (Tr. 18, 29, 150). Prior to his alleged injuries, Harris earned a GED and worked on an oil rig, on a cable pole crew, at a tire plant, and at a Wal-Mart. (Tr. 40–41). These jobs included work as a machine operator, material handler, construction worker, and welder. (Tr. 42). In July 2010, Harris underwent triple bypass surgery performed by Dr. Athanasuleas at Brookwood Medical Center. (Tr. 252). Despite being cleared by his doctor to return to work after the bypass, Plaintiff has not sought employment since his surgery. (Tr. 32–33). During a neurologic exam in December 2013, Dr. Drummond of Vascular Associates of Birmingham found that Harris had no focal weakness.[2] (Tr. 304). He rated Harris' strength as a "B" and found minimal Internal Carotid Artery ("ICA") stenosis.[3] (*Id.*) Dr. Drummond recommended annual carotid ultrasounds for Harris. (*Id.*)

Plaintiff sought medical care from his current primary care physician, Dr. Martin, for the first time in January 2012, two years before filing the current request for SSI and DIB. (Tr. 309). In May 2012, Harris complained of back pain to Dr. Martin; however, Harris described his pain as

---

[2] A focal deficit is a "problem with nerve, spinal cord, or brain function" that can affect movement changes. These effects can include "paralysis, weakness, loss of muscle control, increased muscle tone, loss of muscle tone, or movements a person cannot control . . . ." *Focal Neurologic Deficits*, U.S. NATIONAL LIBRARY OF MEDICINE (Oct. 3, 2017), https://medlineplus.gov/ency/article/003191.htm.

[3] ICA stenosis occurs when the carotid arteries, which are the main arteries used to provide blood to the brain, are blocked. ICA stenosis can result in a stroke as well as weakness in part of the body and a loss of sensation. Michael A. Chen, MD, PhD, *Carotid Artery Stenosis- Self-Care*, U.S. NATIONAL LIBRARY OF MEDICINE (Oct. 3, 2017), https://medlineplus.gov/ency/patientinstructions/000717.htm.

being a "1" on a pain scale. (Tr. 327–28). Harris informed Dr. Martin that pain in the lower part of his back and neck had been going on "for a while" and was getting worse. (Tr. 327). Dr. Martin diagnosed Harris with chronic back pain in May 2012. (Tr. 330). To treat the chronic back pain, Dr. Martin prescribed physical therapy. (Tr. 331).

After attending physical therapy, Harris returned to Dr. Martin in February 2013 with complaints of worsening back pain. (Tr. 342). In May 2013, Harris described "his back pain [as] getting unbearable." (Tr. 348). Despite these and other complaints to Dr. Martin, upon examination Harris was found to be grossly intact, non-focal, and not in any acute distress. (Tr.342–44, 347–50). Dr. Martin prescribed pain injections from Dr. Howell of North Alabama Bone & Joint for the back pain. (Tr. 342). SI joint injections were done in the fall of 2014. (Tr. 623). The injections gave Harris 40% to 50% relief for months and led Harris to believe he was better. (*Id.*)

In April 2015, Harris visited Dr. Martin again. At this visit, Harris denied any muscle weakness, back pain, or joint pain. (Tr. 655). Dr. Martin did not find Harris to be in any acute distress, and found him to be neurologically intact and non-focal. (*Id.*) At another appointment in June 2015, Harris had 5/5 motor strength in his upper extremities, despite claims of muscle weakness in May 2015. (Tr. 660, 709).

In addition to treatment by Dr. Martin and Dr. Howell, Harris was also seen by Dr. Kast of North Alabama Neuro Services during 2014 and 2015. (Tr. 483, 498). Dr. Martin referred Harris to Dr. Kast in April 2014. (Tr. 483). During an appointment with Harris in July of 2014, Dr. Kast stated that Harris' degenerative lumbar disc disease was "age appropriate" as there was no "evidence of gross bony abnormalities or alignment issues." (Tr. 499–500). Harris was not in any obvious distress during the visit and his "neurologic exam [was] absolutely normal in both lower

extremities." (Tr. 499). After reviewing Harris' CT scan, Dr. Kast concluded that the "minimal amount of degenerative changes are absolutely typical for anyone over the age of 35." (Tr. 500).

A year later, in June 2015, Dr. Kast saw Harris again regarding Harris' complaints of back pain. The records from the appointment note that Harris had "no obvious cranial nerve deficits" and had a "normal motor, sensory and tendon reflex exam in both upper extremities." (Tr. 679). There was also no Hoffman sign[4] and in the lower extremities there were no long tract findings.[5] (*Id.*). Dr. Kast concluded that Harris' condition did not warrant surgery, and referred Harris back to Dr. Howell for injection therapies. (Tr. 678-680).

## II. ALJ Decision

The Act uses a five-step sequential evaluation process to determine a claimant's disability. 20 C.F.R. §404.1520(a) and 416.920(a). First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. §404.1520(b) and 416.920(b). Substantial gainful activity is work done for pay or profit that requires significant physical or mental activities. 20 C.F.R. §404.1572(a-b) and 416.972(a-b). If the claimant has employment earnings above a certain threshold, the ability to engage in substantial gainful activity is generally presumed. 20 C.F.R. §404.1574, 404.1575, 416.974, and 416.975. If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability, regardless of a medical condition or age, education, and work experience. 20 C.F.R. §414.1520(b) and 416.920(b).

Second the ALJ must determine whether the claimant has a medically-determinable impairment that significantly limits the claimant's ability to perform basic work activities. 20

---

[4] A Hoffman sign is a test used to indicate problems in the spinal cord. The test is conducted by tapping the third or fourth fingernail. If the finger involuntary flexes, then the Hoffman sign is positive. *Hoffman's Sign*, MS ENCYCLOPEDIA (Jan. 21, 2008), http://www.mult-sclerosis.org/Hoffmanssign.html.
[5] Long tract findings are neurological signs which indicate the presence of a lesion in the spinal cord or brain. *Long Tract Signs*, THE FREE DICTIONARY, https://medical-dictionary.thefreedictionary.com/long+tract+signs (citing MOSBY'S MEDICAL DICTIONARY (9th ed. 2009)).

4

C.F.R. §404.1420(c) and 416.920(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id*. Third, the ALJ must determine whether the claimant's impairment meets or functionally equals an impairment listed in 20 C.F.R. §404, Subpart P, Appendix 1. If the criteria for impairment is met or functionally equal, the claimant is disabled. 20 C.F.R. §404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the impairment is not met or is not functionally equivalent, the ALJ will assess the claimant's residual functional capacity ("RFC") to perform, given their impairment, in a work setting. 20 C.F.R. §§404.15245(a)(1) and 416.920(a)(1). The RFC is based on medical and other evidence in the record. 20 C.F.R. §§404.1520(a)(4)(iv) and 416.920(a)(4)(iv). The ALJ makes an assessment about a claimant's RFC using a two-step process that determines: (1) whether there is an underlying medically-determinable impairment that could reasonably be expected to produce the claimant's pain; and (2) the extent to which the claimant's symptoms would limit claimant's functioning. 20 C.F.R. §§404.1545(e) and 416.920(e). To determine the limiting effect of the claimant's impairment, the ALJ must consider the credibility of the claimant's statements about their pain the context of the record. 20 C.F.R. §§404.1529(c)(3) and 416.920(c)(3).

Once the ALJ has determined Plaintiff's RFC, the ALJ will consider in step 4 whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§414.1520(f) and 416.920(f). If the claimant is found capable of performing past relevant work, then the claimant is not disabled. *Id*. If the claimant is unable to perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. §§404.1520(a)(4)(v) and 416.920(a)(4)(v). In the fifth step, the ALJ will determine whether the claimant is able to perform any other work in the national economy that is commensurate with their RFC, age, education, and work experience. 20 C.F.R. §404.1520(g). Although the claimant

must still prove disability, at this point the burden of production shifts from the claimant to the ALJ. The ALJ must provide evidence, in significant numbers, of jobs in the national economy that claimant can do, given their RFC, age, education, and work experience. 20 C.F.R. §§404.1520(g), 404.1560(c), 416.912(g), and 416.960(c).

Here, the ALJ determined that the claimant met the insured status requirements of 20 C.F.R. §§216(i) and 223 of the Act through December 31, 2015. (Tr. 12). Nevertheless, the ALJ determined that the claimant is not entitled to benefits under the 5-step sequential evaluation process.

### III. Plaintiff's Argument for Remand or Reversal

Plaintiff presents two distinct arguments in favor of reversing the ALJ decision. First, Plaintiff argues that the "ALJ did not properly assess the Plaintiff's credibility consistent with the regulations." (Doc. #11 at 3). Second, Plaintiff claims that "the ALJ failed to properly articulate good cause for according less weight to the opinion of Plaintiff's treating physician when finding the Plaintiff was not disabled." (Doc. #11 at 10). Each of these arguments is considered below, in turn.

### IV. Standard of Review

Judicial review of disability claims under the Act is limited to two questions: (1) whether the record reveals substantial evidence to sustain the ALJ's decision; and (2) whether the correct legal standards were applied. 42 U.S.C. §405(g); *see Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). If the Commissioner's findings are supported by "substantial evidence," they are conclusive. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The

district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *See id*. (citing *Bloodsworth v. Heckler*, 703 F..2d 1233, 1239 (11th Cir. 1983)). If supported by substantial evidence, the Commissioner's factual findings *must* be affirmed, even if the record suggests otherwise. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (emphasis added). Nevertheless, while the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). Legal standards are reviewed de novo. *Moore*, 405 F.3d at 1211.

V. **Analysis**

For the reasons explained below, the court finds that the decision of the Commissioner is due to be affirmed.

A. **Substantial Evidence Supports the ALJ's Findings.**

Plaintiff's initial argument is that the ALJ did not properly assess Plaintiff's credibility in evaluating subjective complaints of disabling symptoms. (Doc. #11 at 3). It is axiomatic that Plaintiff bears the burden of establishing that he is disabled. *Green v. SSA.*, 223 Fed. Appx. 915, 923 (11th Cir. 2007). In the context of this case, Plaintiff must satisfy the pain standard test applied by the Eleventh Circuit by showing "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). If the ALJ determines that Plaintiff has a medically determinable impairment that could reasonably be expected to produce his pain, he must then evaluate the intensity and persistence of Plaintiff's symptoms to determine if they limit his capacity to work.

7

20 C.F.R. §404.1529(c)(1). The ALJ should use all available evidence in making this determination. *Id*.

Here, the ALJ determined that Harris had several underlying medical conditions. (Tr. 13). ("the claimant has the medically determinable impairments of neuropathy, chronic obstructive pulmonary disease, and carotid artery stenosis . . .") And while the record did not provide objective evidence confirming the severity of the alleged pain, the ALJ found that Plaintiff's objective medical condition *could* be expected to cause symptoms as alleged. (Tr. 15). However, the ALJ did not find Plaintiff's claims regarding the intensity, persistence, and limiting effects of such symptoms to be entirely credible. (*Id*.)

"A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). If the ALJ discredits Plaintiff's subjective testimony, he must articulate "explicit and adequate reasons for doing so." *Id*. Plaintiff's medical records must be reviewed to determine if his complaints of pain are demonstrable within the record. 20 C.F.R. 404.1529(c)(1). There are several circumstances under which an ALJ may conclude that complaints of pain are not credible. Claims of long-term pain may be discredited by evidence that the "pain had not require[d] routine or consistent treatment." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005); *see also Ogranaja v. Comm'r of Soc. Sec. Admin.*, 186 Fed. Appx. 848, 851 (11th Cir. 2006) (gaps in treatment history may be used as evidence to discredit claims of disabling pain). The Eleventh Circuit has also held that "refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (citing *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988)). The ALJ may also consider a claimant's daily activities as

a factor in determining the credibility of pain claims. *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984).

Plaintiff argues that the ALJ failed to consider substantial evidence of debilitating back pain as purportedly substantiated by visits with Drs. Martin, Clement, and Howell. (Doc. #11 at 5–7). In 2014, Dr. Howell provided Plaintiff SI joint injections. (Tr. 623). The injections gave Harris 40% to 50% relief for months. (*Id.*) "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984); 20 C.F.R. §404.1529(c)(3)(iv). Because these injections successfully treated the back pain for months at a time, Plaintiff's condition is not considered disabling. *Harwell*, 735 F.2d at 1293.

At an appointment in July 2014, Dr. Clement described Plaintiff as a "well-developed, well-nourished while male, walking unassisted." (Tr. 504). He described Plaintiff's stenosis as "very mild." (*Id.*) After reviewing Plaintiff's x-rays, Dr. Clement observed that any degenerative disk disease was "moderate" and that Plaintiff's femurs were "normal." (*Id.*) Dr. Clement concluded that pain treatments gave Plaintiff "significant relief." (Tr. 505).

Dr. Martin observed that Plaintiff was "grossly intact and non-focal" at multiple appointments. (Tr. 477, 482, 486, 655). He described Plaintiff as "well developed, well nourished" and in "no acute distress" at an April 2014 appointment. (Tr. 477). A CT scan included in Dr. Martin's records and signed by Dr. Martin indicated that Plaintiff's lumbar vertebra were "essentially unremarkable." (Tr. 496). In April 2015, Dr. Martin observed that Plaintiff was not experiencing any "back pain, joint pain, joint swelling, muscle weakness, [or] stiffness." (Tr. 655).

In reviewing all of the medical records, the ALJ assigned significant weight to the opinion of Dr. Kast, one of Plaintiff's treating physicians. (Tr. 16–17). Records from appointments with

Dr. Kast in both 2014 and 2015 noted that Plaintiff was not in any obvious distress. (Tr. 15, 499). A July 2014 neurological examination showed Plaintiff to be "absolutely normal" in both lower extremities. (*Id.*) A CT scan found degenerative changes in the lumbar spine to be "normal." (Tr. 499). Dr. Kast found no long tract signs in Plaintiff's lower extremities nor any cranial nerve deficits. (Tr. 15, 499). Plaintiff's Hoffman sign was negative and he had normal motor and sensory examinations in all extremities. (Tr. 16, 499). The results of a cervical MRI were "essentially negative." (Tr. 680). Moreover, Dr. Kast found no justification for surgery, and recommended conservative treatment. (Tr. 680). The rendering of such conservative treatments may be considered by an ALJ in resolving credibility issues against a claimant claiming disabling pain. *Sheldon v. Astrue*, 268 Fed. Appx. 871, 872 (11th Cir. 2008) (citing *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996)).

The ALJ also considered the opinions of Drs. Whitney and Estock, state agency medical consultants. (Tr. 16). The consultants are considered experts in issues surrounding Social Security applicants, and the opinions of the consultants, if supported by the record, can be given great weight by the ALJ. See 20 C.F.R. §§404.1512(b)(8), 404.1527(e)(2)(i), (ii); Social Security Ruling (SSR) 96-6p, 1996 WL 374180 (S.S.A.). In his report, Dr. Estock described Plaintiff's daily activities which included helping care for two pets, preparing meals, performing chores, driving, shopping, attending church, and occasionally going fishing. (Tr. 81). Based on his evaluation, Dr. Estock concluded that Plaintiff could function "at least at a semi-skilled level." *Id*.

Dr. Whitney also provided opinions about the capacities of Plaintiff's physical functions. (Tr. 87–96). He recognized that Plaintiff's physical health would prevent him from being able to climb ladders, ropes, or scaffolds, yet felt confident that Plaintiff could lift and carry ten pounds frequently and twenty pounds occasionally. (Tr. 93–94). He concluded that Plaintiff could sit,

stand, and walk for six hours a day during an eight-hour work day as well as frequently balance, stoop, kneel, crouch, and climb ramps and stairs. (*Id.*)

The medical consultants' conclusions are supported by Plaintiff's own testimony. Plaintiff testified that he cares for his children, drives, shops, cares for his own personal needs, helps around the house, and occasionally attends football games. (Tr. 30–31, 33–35).

Taken together, the medical records from three treating physicians and two state agency medical consultants are substantial evidence which supports the ALJ's conclusion that Plaintiff is not disabled and can engage in light work. For this reason, Plaintiff's first ground for reversal is due to be denied.

### B. Proper Weight was Accorded to the Opinion of Dr. Martin.

Plaintiff argues that the ALJ failed to properly articulate good cause for according less weight to the opinion of Dr. Martin, Plaintiff's treating physician. (*See* Doc. #11 at 10). While opinions of treating physicians are generally entitled to significant weight, an ALJ may discount a treating physician's opinion for good cause. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause may be found when (1) the treating physician's opinion is not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion is conclusory or inconsistent with the doctor's own medical records. *Id.*

Here, the ALJ discounted the debilitating assessment of Dr. Martin, and gave no weight to "Dr. Martin's more specific statements about [Plaintiff's] functional limitations" based on the conclusion that Dr. Martin's opinions were "not consistent with the substantial medical evidence of record." (Tr. 16). Specifically, the ALJ noted that Dr. Martin prescribed Plaintiff a cane just a few weeks prior to the Social Security hearing, despite a lack of medical evidence substantiating

11

difficulty with balance or ambulation. (Tr. 16, 687). In fact, the ALJ found that substantial medical evidence undermines the decision to prescribe a cane. (*See e.g.*, Tr. 436, 499, 518) (noting that Plaintiff had normal strength, normal gait, normal motor function, an "absolutely normal" neurologic exam, and no muscle or joint aches or pains)). The ALJ's determination was based upon substantial evidence.

Finally, the question as to whether a claimant can carry on meaningful employment is a determination reserved solely for the ALJ and does not qualify as a "medical opinion." (Tr. 16); *see* 20 C.F.R. §404.1527(d); *Heppell-Libsansky v. Comm'r of Soc. Sec.,* 170 Fed. Appx. 693, 697 (11th Cir. 2006). Only the Commissioner can make such a finding as it is an administrative decision that is dispositive of a Social Security case. *Id*.

For these reasons, Plaintiff's second ground for reversal is due to be denied.

## VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence. The court further finds that proper legal standards were applied in reaching the ALJ's determination. The Commissioner's final decision is due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this November 28, 2017.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE